UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| **KIRK McKENZIE** | | * | **CIVIL ACTION NO. 11-268** |
| | | * | |
| | **Plaintiff** | * | **SECTION: H** |
| | | * | **JUDGE JANE TRICHE MILAZZO** |
| **VERSUS** | | * | |
| | | * | **MAGISTRATE: 4** |
| **ROLAND LADREYT, ET AL.** | | * | **KAREN WELLS ROBY** |
| | | * | |
| | **Defendants** | * | |
| | | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**ORDER AND REASONS**

Before the Court are Defendants Roland Ladreyt, Greg Champagne, and George Morehouse's Motion for Summary Judgment (R. Doc. 57) and Plaintiff Kirk McKenzie's Cross Motion for Partial Summary Judgment on the Issue of Liability for Negligence. (R. Doc. 101). For the reasons that follow, the Defendants' Motion is GRANTED IN PART and DENIED IN PART and the Plaintiff's Motion is DENIED.

**BACKGROUND**

At the time of the incident giving rise to his claims, Plaintiff Kirk McKenzie ("McKenzie") was incarcerated at the Nelson Coleman Correctional Center ("Nelson") in Killona, Louisiana.  The Defendants include Warden Roland Ladreyt ("Ladreyt") of Nelson, St. Charles Parish Sheriff Greg Champagne ("Champagne"), and St. Charles Parish Officer George Morehouse ("Morehouse"), an officer assigned to Nelson.

Morehouse's duties at the correctional facility included operating all of the automatically controlled doors in "C-pod," where McKenzie's inmate pod was located.  Morehouse performed this duty from the control room while viewing the area around the doors on video monitors, opening and closing doors as necessary by pressing various buttons .

On January 7, 2011, McKenzie was conversing with a deputy just outside of his inmate pod. After the conversation, the deputy signaled Morehouse to open the door to McKenzie's pod to allow him entry.  Morehouse opened the door as requested.  Morehouse pushed the button to close the door before McKenzie was able to pass, causing the door to close on his right leg.  There is no indication that the particular door at issue was or had been malfunctioning.

Immediately thereafter, McKenzie was examined by Barbara Champagne, an onsite licensed practical nurse.  According to McKenzie's medical records, the nurse found no visible signs of injury, but offered McKenzie Motrin for his pain.  McKenzie refused the Motrin, claiming that he was already taking Motrin.  Pursuant to the correctional facility's rules, the nurse advised him to fill out

a written request for medical services if the pain persisted.

On January 13, 2011, McKenzie filled out such a written request.  On January 18, 2011, Dr. Robert Wood examined McKenzie.  According to Dr. Wood's tests, McKenzie "squats fair" and although the area was tender, his right sacroiliac was within the normal range.  After examining McKenzie, Dr. Wood recommended an exercise program, increased his dosage of Elavil from 10 mg to 25 mg, and prescribed an over-the-counter cream for pain relief.

On February 10, 2011, Plaintiff filed his *pro se* Complaint, alleging violations under 42 U.S.C. § 1983 against Ladreyt and Morehouse, seeking the following:  (1) compensation for his pain and suffering and mental and emotional distress in the amount of $500,000.00, (2) that he be moved to another facility, and (3) any other award including future medical bills. (R. Doc. 1.)  On April 24, 2012, McKenzie filed an Amended Complaint re-averring each of the claims raised in his original Complaint, but additionally included allegations against Morehouse of wanton or reckless disregard or malice and willfulness in causing him injuries in violation of his constitutional rights. (R. Doc. 34). Additionally, McKenzie asserted a claim under a state law theory of *respondeat superior*, citing La. Civ. Code arts. 2317 and 2320. (*Id.*)  An alternative argument asserted in the Amended Complaint was that Morehouse acted negligently under state tort law and in violation of state law prohibiting corporal punishment. (*Id.*)  Further, the damages were amended to include (1) future lost wages and benefits, (2) loss of earning capacity, (3) other past, present and future damages and medical and pharmaceutical expenses, (4) attorneys' fees under 42 U.S.C. § 1988, and (5) punitive damages

pursuant to 42 U.S.C. § 1983. (*Id.*)  On May 3, 2012, McKenzie filed a Second Amended Complaint, adding Champagne under the theory of *respondeat superior* for the state law tort claims and repeating all allegations in the First Amended Complaint. (R. Doc. 47).

On May 11, 2012 Defendants filed a Motion for Summary Judgment.  (R. Doc. 57.)  On June 11, 2012 Plaintiff filed his opposition.  (R. Doc. 100.)  The Motion was taken under submission on June 20, 2012.

On June 11, 2012 Plaintiff filed a Cross-Motion for Partial Summary Judgment on the Issue of Negligence.  (R. Doc. 101.)  On July 11, 2012 Defendants opposed the Motion.  (R. Doc. 109.)  The Court took the Motion under submission on July 18, 2012.

## LEGAL STANDARD

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (2012).  A genuine issue of fact exists only "[i]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the nonmovant and draws all reasonable inferences in his favor.

*Coleman v. Houston Indep. Sch. Dist*., 113 F.3d 528 (5th Cir. 1997).  "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).  Summary judgment is appropriate if the non-movant "[f]ails to make a showing sufficient to establish the existence of an element essential to that party's case...." *Celotex Corp. v. Catrett*, 477 U.S. 317,324 (1986).  "In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial. *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293,301 (5th Cir. 2004) (internal citations omitted). "We do not ... in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Badon v. RJR Nabisco, Inc*., 224 F.3d 382,394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp*., 37 F.3d 1069,1075 (5th Cir. 1994)). Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion." *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D.La. 2005).

**LAW AND ANALYSIS**

*I.     Defendants' Motion for Summary Judgment*

Defendants request summary judgment on the basis that the Plaintiff's constitutional rights were not violated, and that their actions on January 7, 2012 were objectively reasonable in light of the circumstances. (R. Doc. 57.)  For the reasons that follow, the Court finds that the Defendants have shown that there is no genuine issues of material fact in regards to Plaintiff's constitutional claims and state law claim of intentional infliction of emotional distress.  On the other hand, the Court finds that there is a genuine issue of material fact concerning Plaintiff's state law negligence claim.  Accordingly, Defendants' Motion is granted in part and denied in part.

**A.     Claims under the Eighth Amendment**

The Plaintiff alleges two claims under the Eighth Amendment.  This Order first  addresses the claim for inadequate medical treatment, then the claim for excessive force.

i.     <u>Inadequate Medical Treatment</u>

Plaintiff alleges that Defendants violated Plaintiff's constitutional rights by failing to provide him adequate medical treatment.   Plaintiff avers that this constitutes cruel and unusual punishment proscribed by the Eighth Amendment.

Defendants refute Plaintiff's assertions that he received inadequate medical treatment constituting cruel and unusual punishment.  (R. Doc. 57-1 at 6.)  There are two requirements, Defendants explain, that a plaintiff must demonstrate to prove a prison official has violated the

Eighth Amendment with regard to an inmate's medical care:  (1) the deprivation of medical care must be objectively serious, and (2) intent or a culpable state of mind. (*See id.*) (citing *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, (1976)).  The Defendants aver that McKenzie was never deprived of medical care because immediately after the incident, he was examined by both a nurse and a doctor, whom offered and/or proscribed treatment and medication. (*Id.*)  The Defendants maintain that McKenzie was not deprived of medical care because every time he requested it, he received it. (*Id.*)

    McKenzie counters that the Defendants' omissions amount to deliberate indifference of his serious medical needs in violation of the Eighth Amendment.  On the day of the incident, McKenzie argues, he should have been properly examined by a doctor because of the numerous issues related to back injuries rather than a nurse, who merely offered him over-the-counter pain medication. (R. Doc. 100.)  McKenzie further argues that the nurse did not actually treat him despite his complaints about back pain, insisting that "the medical records contain no indication [that] an examination was performed." (*Id.*)  Furthermore, McKenzie  contends that he was not seen by a doctor until eleven days after the incident occurred, and during his examination, the doctor only relied on a physical inspection thus failing to thoroughly examine him by performing an MRI or scheduling a follow-up visit. (*Id.*)  Had the doctor conducted an MRI or referred him to a chiropractor, McKenzie avers, his back problems may not have persisted. (*Id.*)

    This Court is guided by *Estelle v. Gamble,* 429 U.S. 97 (1976).  In *Estelle*, the United States

Supreme Court established the appropriate standard for inmates who claim a prison official failed to attend to serious medical needs in violation of the Eighth Amendment. *Id.* The *Estelle* Court held that "*deliberate indifference* to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Id.* at 104 (internal citations omitted)(emphasis added). Furthermore, not all cases of inadequate medical treatment rises to the level of cruel and unusual punishment; indeed, "it is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *See id.* at 106. For a claimant to prevail, he must prove "objectively that he was exposed to a substantial risk of serious harm," and that the prison officials "acted or failed to act with deliberate indifference to that risk," which requires actual knowledge and intentional disregard. *Victoria W. v. Larpenter*, 369 F.3d 475, 483 (5th Cir. 2004) (quoting *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002)).

The uncontested facts show that Plaintiff was immediately examined by a licensed nurse, Barbara Champagne, at the Nelson medical department. After treating McKenzie and providing medication, Nurse Champagne told him to fill out a request if pain continued. McKenzie filled out such form and was seen by Doctor Wood. He examined Plaintiff and then proscribed him an exercise program, increased medication, and prescribed pain relief cream. Neither the nurse nor the doctor who examined McKenzie believed further treatment or tests were necessary. There is no evidence that prison officials refused to treat McKenzie, intentionally treated him incorrectly, or engaged in any comparable conduct that would clearly evince a wanton disregard for his medical

needs.  In fact, the record indicates quite the opposite.  The record clearly shows that Plaintiff was never denied medical treatment and was provided medical treatment every time he requested it. Lacking proof of a serious medical need and deliberate indifference thereof, the Court dismisses this claim.

ii.    <u>Excessive Force/Qualified Immunity</u>

Plaintiff alleges that Defendants violated his constitutional rights by using excessive force. Defendants contest Plaintiff's Eighth Amendment claim for excessive force. (R. Doc. 57.) Defendants define a three-pronged test for excessive force in which a plaintiff must prove:  (1) a significant injury, (2) injury resulted directly and only from the use of force that was clearly excessive to the needs, and (3) that the excessiveness was unreasonable. (*Id*.) (citing *Stoik v. Ponseti*, 35 F.3d 155 (5th Cir. 1994)).  Defendants argue that the case at hand fails with respect to all three prongs.  First, a significant injury did not exist because the nurse's examination failed to reveal an injury and, as evidenced by his deposition, McKenzie was not significantly injured because he was unable to recall which leg was caught in the door. (*Id*.)  As for the second and third prong, Defendants maintain that McKenzie's failure to show a serious injury means that he cannot demonstrate that the serious injury resulted directly and only from the use of force that was clearly excessive to the needs nor that the excessiveness was unreasonable. (*Id*.)

Defendants also contend that Morehouse, as a public officer, is shielded from liability for civil damages.  Qualified immunity exists, Defendants explain, so long as the acts performed in the

-9-

course of official conduct do not violate clearly established statutory or constitutional rights which a reasonable person would have known. (*Id*.) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Defendants maintain that Morehouse was performing his duties in good faith, with the reasonable belief that his actions were in accordance with existing law and authority, and that closing the door before McKenzie passed through was unintentional. (*Id*.)

In response, McKenzie contends that excessive force in violation of 42 U.S.C. § 1983 was used, explaining that all three prongs of the test articulated above have been satisfied. First, he sustained significant injuries to his lower back as a result of the door closing on his leg and his attempt to pull his leg free. (R. Doc. 100.) McKenzie also contends that the injury need not be "significant" to satisfy the first prong because a § 1983 action merely requires a plaintiff prove that he suffered at least some form of injury. (*Id*.) (citing *Hudson v. McMillan*, 503 U.S. 1, 4 (1992)). McKenzie attests that his medical records and his deposition demonstrate that he suffered an injury. As for the second prong requiring proof that the injury resulted directly and only from the use of force that was clearly excessive to the needs, McKenzie alleges that prior to the incident, he did not experience or seek treatment for pain associated with the right side of his lower back, which shows that his injuries were a direct consequence of the door closing on his leg. (*Id*.) McKenzie avers that Morehouse's act of closing the door on his leg was purposeful, constitutes excessive force, and is objectively unreasonable. (*Id*.) Finally, McKenzie argues against qualified immunity on the grounds that a reasonable officer in Morehouse's position would have known

closing a door on a prisoner's limb would violate a prisoner's established rights. (*Id*.)

The Court agrees with the Plaintiff that the Supreme Court's decision in *Hudson v. McMillian*, 503 U.S. 1, 122 S.Ct. 995 (1992) overruled the "significant injury" prong cited by the Defendants' Motion. Therefore, in order for a plaintiff to prevail on an Eighth Amendment "excessive force" claim, the plaintiff must establish an injury, which resulted directly and only from the use of force that was clearly excessive to the need, the excessiveness of which was objectively unreasonable, and proof that the action constituted an unnecessary and wanton infliction of pain. *See Hudson*, 503 U.S. at 4. The Supreme Court concludes that although a serious injury is not required, an Eighth Amendment violation requires proof that the prison officials "maliciously and sadistically use[d] force to cause harm." *Id.* at 9.

McKenzie claims that Morehouse's act of closing the door on his leg was intentional because Morehouse could plainly see in the video monitor that he had not passed through the door. (R. Doc. 100.) McKenzie adds that Morehouse's actions were not accidental because Morehouse had several months of experience operating the motorized doors. (*Id.*) On the other hand, Morehouse described the incident with McKenzie as an accident. (R. Doc. 109-12 at 9.) It was not something that was done purposefully or intentionally. (*Id.*) Moreover, Morehouse states that he was watching the screen and began to close the door once McKenzie had started to walk through it. (*Id.* at 10.)

The facts alleged by the Plaintiff, however, do not amount to evidence sufficient to sustain

a finding of wanton infliction of harm by the Defendants.  Although Morehouse did testify that he looked away from his monitor to press another button, there absolutely no way that this act can amount to malice.  Further, nothing in the record illustrates that Morehouse had the requisite intent to cause McKenzie harm.  Finding a lack of genuine issue of fact regarding the excessive force claim, the Court concludes that this claim must be dismissed.

A two-step analysis is used to determine whether a defendant is entitled to summary judgment on the basis of qualified immunity.  "First, we determine whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights.  If not, out analysis ends." *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007).  Having found that there is no violation of Plaintiff's constitutional rights the Court need not make any further inquiry.

**B.      Louisiana State Law Claims**

Defendants also move for summary judgment against McKenzie's state law claims.  The Court must decide whether to exercise its judicial power over the state law claims.  Upon a review of pendant jurisdiction, this Court exercises its discretion to retain Plaintiff's claims.

Pendent jurisdiction exists whenever there is a claim that presents a federal question, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises one constitutional case. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).  The federal claim must have substance sufficient to confer subject

matter jurisdiction on the court, and both the state and federal claims must derive from a common nucleus of operative fact.  *Id.*  A federal court's power to decide on the pendant state law claims, however, need not be exercised in every case in which it is found to exist because "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Id.* at 726.  Federal courts are permitted to exercise this power if considerations of judicial economy, convenience, and fairness to litigants so demand, but if these are not present, "a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them." *Id.* (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).   As a matter of comity and to promote justice between the parties, federal courts are encouraged to avoid needless decisions of state law. *Id.*  On the other hand, It is a well-established principle that the federal court retains the power to hear the state law claims notwithstanding the dismissal of the federal claims that initially invoked its jurisdiction.  *Id.*

In the present case, this Court has original jurisdiction over Plaintiff's Eighth Amendment claims.  Plaintiff's remaining state law claims are grounded in this common nucleus of operative fact.  "Under *Gibbs*, a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  Considerations of judicial economy, convenience, and fairness to litigants indicate that the remaining state law claims should remain before this Court despite the dismissal of the federal claims.  Dismissal of the claim now would inhibit both parties in relation to time and expense.

Additionally, this Court has expended substantial time familiarizing itself with the facts of the case and is likely in the best position to handle the remaining claims efficiently and expeditiously. Accordingly, this Court will exercise jurisdiction over the Plaintiff's remaining state law claims.

      i.    <u>Respondeat Superior</u>

It is uncontested that a government official may not be held liable under § 1983 for the unconstitutional conduct of their subordinate under a theory of respondeat superior. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2008); *Kohler v. Englade*, 470 F.3d 1104, 1114-15 (5th Cir. 2006); *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996). Accordingly, Champagne and Ladreyt cannot be held liable under this theory for Plaintiff's section 1983 claims.

      ii.    <u>Negligence</u>

Plaintiff asserts that where the actions of Morehouse were not intentional, they were negligent. (R. Doc. 34 at ¶10.) Through direct liability and the doctrine of respondeat superior, Plaintiff alleges that the Defendants committed negligent acts or omissions resulting in injuries. (*Id.* at ¶¶11-12.) Plaintiff contends that prison authorities owe a duty to use reasonable care to protect inmates from harm. (R. Doc. 101-3 at 15.) Plaintiff avers that Morehouse was under a duty to provide McKenzie with a reasonably safe place to pass and clearly could have anticipated the resulting harm from closing and entrapping McKenzie's leg with a motorized metal prison door. (*Id.* at 15-16.) Moreover, Plaintiff argues that he is entitled to a presumption of causation that the

entrapment of his leg caused his injuries.  (*Id.* at 17.)

Defendants aver that unless a plaintiff can prove that the police department owed him a special duty outside of the one owed to the general public, he cannot recover damages for breach of such duty.  (R. Doc. 57-1 at 17.)  Ultimately, Defendants contend that an officer is required to choose a course of conduct that is reasonable under the circumstances, and that is what Morehouse did.  (*Id.*)

Louisiana Civil Code Article 2315 provides that "every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."  La. Civ. Code Ann. art 2315.  Louisiana courts recognize a four part test in determining whether a party is negligent under Louisiana law.  *See Mart v. Hill*, 505 So. 2d 1120, 1122 (La. 1987).  Under the duty-risk analysis a court must determine: (1) whether defendant owed plaintiff a duty of care, (2) whether defendant breached that duty of care, (3) whether the conduct in question was the cause-in-fact of plaintiff's injuries, and (4) whether the conduct in question was the proximate cause of plaintiff's injuries. *See id.*

"Generally, a sheriff or police officer owes a general duty to a prisoner to save him from harm and the officer is liable for the prisoner's injury . . . resulting from a violation of such duty." *Manuel v. City of Jeanerette*, 95-1202, pp. 4-5 (La. App. 3 Cir. 9/10/97), 702 So. 2d 709, 712 (quoting *Barlow v. City of New Orleans*, 241 So. 2d 501 (La. 1970)) (internal quotations omitted).  On the other hand, "the [] officer must only do what is reasonable under the circumstances, and he is only

liable for a certain category of risks." *Bonnet v. Lafayette Parish Sheriff*, 1008-905 (La. App. 3 Cir. 2/4/09), 2 So. 3d 1280, 1283-84 (citing *Griffis v. Travelers Ins. Co.*, 273 So. 2d 523, 525 (La. 1973)). Accordingly, Morehouse owed a duty to McKenzie to save him from harm.

  The second element requests the Court to assess whether the Defendants breached their duty to act reasonably with McKenzie. Morehouse testified that once he saw Plaintiff stepping through the door he pushed the button to close the door. (R. Doc. 109-12 at 14.) Morehouse further testified that he took his eyes off the screen to press the button. (*Id.* at 15.) Morehouse acknowledged that McKenzie's foot was stuck in the door for approximately five to fifteen seconds. (*Id.*) He did not see this because he was looking at the control board and his eyes were off of the screen. (*Id.*) He was notified to open the door to release McKenzie's leg when Officer Richardson ("Richardson") yelled at him to open the door. (*Id.* at 16.) Morehouse, however, opened the incorrect door. (*Id.*) Thus, Richardson had to yell at him again to tell him to open the correct door. (*Id.*) On the other hand, Morehouse testified that he was not distracted by anything and was attentive. (*Id.* at 14.) Accordingly, the Court finds that there is a genuine issue of fact regarding whether or not the Defendants breached their duty.

  The third element requests the Court to analyze whether the Defendants conduct was the cause-in-fact of the Plaintiff's alleged injuries. Plaintiff argues that it is entitled to a presumption of causation pursuant to *Housely v. Cerise*, 579 So. 2d 973 (La. 1991). (R. Doc. 101-3 at 17.) It is Plaintiff's burden to prove the causal relationship between the injury sustained and the accident

which caused the injury. *Peters v. Williams*, 40,403, p. 9 (La. App. 2d Cir. 12/14/05), 917 So. 2d 702. Defendants, however, provide evidence that Plaintiff sustained personal injuries as a result of his left foot being crushed between two vehicles in a previous accident. (R. Doc. 109 at 8.)  The Court finds that there is a genuine issue regarding whether McKenzie "[w]as in good health prior to the accident at issue." *Peters*, 917 So. 2d at 709.  As such, the Court finds that there is a material issue as to the cause of Plaintiff's alleged injuries.

Based on the testimony of Morehouse and the previous accident of the Plaintiff, the Court finds that there is a genuine issue of material fact as to whether or not the Defendants breached their duty to act reasonably and whether or not the incident at Nelson actually caused Plaintiff's injuries.  Accordingly, Defendants' Motion for Summary Judgment is denied on this point.

iii.    <u>Intentional Infliction of Emotional Distress</u>

Plaintiff alleges that Defendants sustained injuries due to Defendants intentional infliction of emotional distress.  (R. Doc. 34 at ¶11.)

To establish a claim for intentional infliction of emotional distress a plaintiff must prove: (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *White v. Monsanto Co.*, 585 So. 2d 1205 (La. 1991).  "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious and utterly intolerable in a civilized community." *Id.* at 1209. "Conduct that is simply tortious or illegal does not rise to the level of extreme and outrageous." *Page v. Benson*, 2012-244, p. 12 (La. App. 3 Cir. 11/7/12), 101 So. 3d 545 (citing *Nicholas v. Allstate Ins. Co.*, 99-2522 (La. 8/31/00), 765 So. 2d 1017).

The Court finds that nothing in the record indicates that any of the Defendants conduct was extreme or outrageous. As the Court has previously discussed, Morehouse did not intend to shut the door on McKenzie's leg. While he did close the door, the intention was for it to close after McKenzie had passed through the doorway. The fact that McKenzie's leg got caught in the doorway was merely an accident. Moreover, McKenzie received medical treatment from a nurse immediately after the incident and a doctor at a later time. Both were received as a result of his requests. In no way can this Court find any piece of evidence to show that the conduct of the Defendants was so extreme or outrageous such as to go beyond all possible bounds of decency. Even if a fact-finder later finds that the Defendants were negligent, this is still insufficient to meet the requirements to show a claim for intentional infliction of emotional distress. As such, Plaintiff's claim of intentional infliction of emotional distress is dismissed.

II.     *Plaintiff's Cross-Motion for Summary Judgment on Negligence*

As previously discussed, *see infra* I(B)(ii), the Court finds that there is a genuine issue of material fact concerning the negligence of Morehouse and his superiors. Accordingly, the Court denies Plaintiff's Cross-Motion for Summary Judgment.

**CONCLUSION**

For the foregoing reasons, the Motion for Summary Judgment filed by Defendants Roland Ladreyt, Greg Champagne, and George Morehouse's Motion for Summary Judgment (R. Doc. 57) is GRANTED IN PART and DENIED IN PART.  Plaintiff Kirk McKenzie's Cross Motion for Partial Summary Judgment on the Issue of Liability for Negligence is DENIED. (R. Doc. 101.)  Accordingly, all claims of the Plaintiff are dismissed except for his state law claim for negligence.

New Orleans, Louisiana, this 14th day of February, 2013.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

-19-